MINNIE E. SMITH v. CHESTER H. WILCOX.

*Trespass. Construction of the words " Wilfully " and " Injury," as used in § 3, No. 4, of the Acts of 1869. Self-Defence. Certified Execution.*

The wilfulness meant by § 3, No. 4, of the Acts of 1869, is such as a drunken person may have. If the act committed by such person is the result of such capacity as he has for determining what he will do, it is within the meaning of the statute. Proof that such person committed an injury, if no excuse or justification appears out of the circumstances, is sufficient from which to find that he did it intentionally or wilfully, according to his capacity, and would make out this part of a case under that statute, unless some excuse or justification is made to appear by way of defence from other circumstances.

The word *injury*, in that statute, was used in the sense of unlawful damage or hurt; and anything done in lawful self-defence, would not be actionable under the statute.

The law allows persons to use against others only such means as are necessary for self-defence. Resort to a deadly weapon is not necessary, except to avert impending death or enormous bodily harm.

In actions upon said statute, the county court may properly grant certified executions; and its finding and adjudication in that behalf, are not revisable on exceptions.

TRESPASS, founded on § 3, No. 4, of the Acts of 1869.* Plea, not guilty, and trial by jury, April term, 1874, BARRETT, J., presiding.

---

* Whereby it is enacted: " Sec. 3. Whenever any person in a state of intoxication shall *wilfully* commit any injury upon the person or property of any other individual, any person who by himself, his clerk or servant, shall have unlawfully sold or furnished any part of the liquor causing such intoxication, shall be liable to the party injured for all damage occasioned by the injury so done, to be recovered in the same form of action as such intoxicated person would be liable to; and both such parties may be joined in the same action; and in case of the death or disability of any person, either from the injury received as herein specified, or in consequence of intoxication from the use of liquors unlawfully furnished as aforesaid, any person who shall be in any manner dependent on such injured person for means of support, or any party on whom such injured person may be dependent, may recover from the person unlawfully selling or furnishing any such liquor as aforesaid, all damage or loss sustained in consequence of such injury," &c.

The evidence of the plaintiff tended to show, that she was the widow of William E. Smith, who was killed by one James Crosier : that said Crosier was plaintiff's father, and that they all resided in the same family ; that on the afternoon of July 4, 1873, the said Crosier and Smith went to the village of Green River, in the town of Guilford, where the defendant kept a store in which he sold without license, intoxicating liquors ; that during that afternoon, the defendant unlawfully furnished three glasses of cherry to said Smith, and four glasses of rum to said Crosier ; that Smith and Crosier arrived home about nine o'clock in the evening, in an intoxicated condition ; that after their arrival home, they drank some cider, and soon after got into an altercation of words, and from that to blows, which finally resulted in Crosier's seizing his gun and shooting Smith, from the effects of which he died in a few minutes ; that before the shooting, Crosier was heard to say, " Bill Smith, you won't breathe after to-night " ; that the plaintiff, with her child two years old, was entirely dependent on the said Smith for support ; that while he was a quarrelsome and dangerous man when under the influence of liquor, yet when sober, he was a kind husband and father, and provided well for the material wants of the plaintiff and her child ; and that since her husband's death, the plaintiff had worked out by the week, to obtain means of support for herself and child.

The evidence of the defendant tended to show, that Smith and Crosier resided about six miles from defendant's place of business ; that on the day mentioned, Smith and Crosier arrived in Green River village between two and half past two o'clock in the afternoon ; that during the afternoon, they drank nothing at defendant's bar but cherry juice ; that Smith drank twice and Crosier three times ; that cherry juice is a liquid prepared and put up by wholesale liquor dealers, and sold to retail dealers, to use in coloring and flavoring other liquors, and that it had no more intoxicating properties than the same quantity of cider would have ; that Smith and Crosier left Green River village for home between five and six o'clock in the afternoon, and were both sober and free from intoxication when they left ; that Crosier started a little first, on foot, in company with another man, and

walked three fourths of a mile before Smith overtook them with his team ; that when he overtook them, they all three stopped at a neighbor's house, got and drank some cider, Smith and Crosier at this time being sober and free from the influence of intoxication ; that on their way home they stopped at another house on the road, procured and drank some more cider, and that it was not until they had left this second house, that either Smith or Crosier began to show any signs of being intoxicated ; that they arrived home a little after nine o'clock in the evening, where they drank more cider, and soon after got into the altercation which resulted in the death of Smith ; that Smith was a young, strong, and athletic man, exceedingly quarrelsome, and when under the influence of liquor was regarded as a very dangerous person ; that he had some two years before, and at a time when he was under the influence of liquor, assaulted Crosier, and beaten him in a brutal manner ; that Crosier was a man over sixty years of age, and stood in great fear of Smith when he was intoxicated, and was well acquainted with Smith's disposition for being quarrelsome and dangerous when in such a condition ; that on the evening in question, Smith was ugly and quarrelsome, and used much harsh and profane language towards Crosier, threatening him with bodily hurt ; that just before the shooting, he threw Crosier upon the floor with great violence, and then threw him out doors with great violence, and threatened that if he came into the house again he would kill him ; that Crosier returned into the house, Smith and Crosier taking seats upon opposite sides of the stove, Crosier on the side nearest to where his gun hung upon the wall ; and that Smith continued to curse and threaten Crosier, whereupon Crosier seized and fired the gun, from the effects of which Smith died soon after.

The defendant requested the court to charge the jury as follows : 1. That the statute upon which the action is founded is unconstitutional, and that the action could not be maintained. 2. That the plaintiff was not entitled to recover anything in this action by reason of any liquors which the defendant might have, by himself, clerk, or servant, unlawfully furnished to the said Smith, although the same might have caused in part the intoxication under which

the said Smith was laboring at the time of the killing. 3. That in order to entitle the plaintiff to recover, she must satisfy the jury by a fair preponderance of evidence, of the truth of the three following propositions, viz: 1. That said Smith came to his death by the wilful act of said Crosier. 2. That the killing of said Smith was neither justifiable, accidental, or excusable, on the part of the said Crosier. 3. That said Crosier was in a state of intoxication at the time of the killing, and that such intoxication was caused in part by liquor unlawfully furnished said Crosier by the defendant, his clerk or servant.

As to the first request, the court refused to hold or charge as requested. As to the second request, the charge was satisfactory and unexceptionable. The court also charged as requested in the 3d sub-division of the third request. As to the 1st and 2d sub-divisions of the third request, the court charged as follows:

"The term, *wilful act*, within the meaning of this statute, does not mean with a malicious intent, having a malicious design to do such an injury. It means, did he fire the gun designing to fire at Smith? That he did fire that gun there is no question. Was that firing accidental? Did the gun go off without his design? If it went off without his designing to fire at Smith, then it was not a wilful act within the meaning of the statute. If, on the other hand, he fired it on purpose, though he might not have intended to kill him, still if he fired at Smith on purpose, it was a wilful act within the meaning of the statute. Being in the condition in which it is conceded he was, he might not have had a comprehensive appreciation of what might be the effect of his firing; still, being in such a condition as he was at the time, the firing was a wilful act, provided it was not accidental, if he fired it purposely at Smith, unless it is shown that he did it in necessary self-defense. If he did it in necessary self-defense, then it would not be a wilful act within the meaning of the statute. If the man had been sober, would it have been necessary for him to have resorted to a deadly weapon in order to save himself from bodily harm? At the time he took the gun and fired it, was that necessary? If he had been sober and in the exercise of a sober man's judgment, was that act necessary in order to protect himself from bodily harm? However a man may be threatened and scolded, and in peril of being injured by his antagonist, if he can get himself out of the way and save himself, short of resorting to a deadly weapon, then the use of such deadly weapon is not necessary for self-defence. If he does not avail himself of

his opportunity to get out of the way, but uses the deadly weapon, then it is a wilful act. You have heard the evidence of Mary Crosier, who was present when the gun was fired, of the parties clinching, and of Crosier's being thrown out of doors, how they both came back into the house, sitting down by the stove, the one upon one side and the other upon the other side, of Mary's calling the attention of Smith to the meat, and of her turning round, and of the gun's going off. In point of fact, was it necessary for Crosier's self-defence, to save himself from bodily harm, in the exercise of a warrantable judgment—the exercise of a sober man's judgment? Had he, in the exercise of a sober man's judgment, reason to suppose it was necessary? If it was thus necessary, then, as a matter of course, the use of the gun would be justifiable; if not, then it would not be. Being drunk on the part of Crosier, does not relieve him from the act at all; nor has he an excuse for doing an act otherwise criminal. The law does not contemplate any such excuse. If a man gets drunk, he does so at his own peril. If a man kills another when drunk, it is accounted to him just the same as if he did it when sober. Was Crosier warranted in supposing the use of the gun to be necessary? If you find this element against him, then you come to the question of damages."

The defendant excepted to the refusal to hold and charge as requested by defendant's first request, and by the second subdivision of defendant's third request. Also, to the charge as to the construction to be given to the words, *wilful act*, in the statutes, and what was meant thereby, as indicated in the charge as above detailed. Also, to that part of the charge above detailed as to what it is the duty of a man to do when he is assaulted and stands in fear of great bodily harm, before he can be justified in resorting to the use of a deadly weapon. Verdict for plaintiff. The court granted a close-jail certificate; to which the defendant excepted.

After verdict, the plaintiff moved for a certificate that the cause of action arose from the wilful and malicious act of the defendant, and that he ought to be confined in close jail; also, for leave to the officer, who served the writ in this case, to complete his return upon the same, by adding thereto his attestation and signature to his said return, which attestation and signature he had omitted to make before said writ was returned and entered in

court. The court granted the leave asked, to which the defendant excepted.

*K. Haskins*, for the defendant.

It will be observed that this act renders the person unlawfully furnishing intoxicating liquors to another, liable only in case the person to whom he furnished it, shall wilfully commit any injury upon the person or property of another. In order to entitle the plaintiff to recover, it was necessary for her to establish the fact that the killing of her husband was a wilful killing. The defendant was, therefore, entitled to have the jury charged as requested in the second sub-division of his third request. The burden was upon the plaintiff to prove that the sale or furnishing was unlawful ; and to that end it became necessary for her to show that the defendant was not a lawfully authorized agent to sell spirituous liquors. So, too, the burden was upon her to show that the shooting was a wilful killing ; and to that end, it was necessary for her to prove that the killing was neither justifiable, accidental, or excusable on the part of Crosier. The court below cast the burden upon the defendant to show that it was an accidental killing, or that it was done in necessary self-defence ; and in this there was error. The court told the jury, that if Crosier fired at Smith on purpose, it would be a wilful act within the meaning of the statute. It is not every firing on purpose, that is a wilful act. If the firing was necessary for Crosier's self-defence, even though he fired at Smith on purpose, it was not a wilful act ; and it was necessary for the plaintiff to show that it was not done in the necessary defence of Crosier's own person.

The court below erred in its charge as to the duty of a man when threatened and in peril of being injured, before he can be justified in resorting to the use of a deadly weapon.

The close-jail certificate was improperly granted, as the case does not come within the meaning of the statute. The defendant has been guilty of no malice in this case ; and the statute under which the defendant is made liable, does not contemplate or presume the defendant to be actuated by malice in whatever he

does to make himself liable under it. Gen. Sts. ch. 121, § 23 ; *Soule* v. *Austins*, 35 Vt. 515. The certificate granted is not such an one as the court, in its discretion, is empowered to make or cause to be made. Gen. Sts. ch. 121, § 23 ; *in re Whee-lock*, 13 Vt. 375.

*C. N. Davenport*, for the plaintiff.

The question of the validity of this statute, cannot be raised upon the issue of not guilty. That plea puts in issue the truth of the declaration, and nothing more. Had the defendant wished to test the validity of the statute, he should have demurred, or moved in arrest of judgment. *Treasurer of Brattleboro* v. *Wait*, 46 Vt. 689. But the statute is, unquestionably, constitutional. *Lincoln* v. *Smith et als.* 27 Vt. 328 ; *Gill* v. *Parker*, 31 Vt. 610 ; *State* v. *Brennan*, 25 Conn. 278 ; *Gray* v. *Kimball*, 42 Me. 299 ; *Commonwealth* v. *Howe*, 13 Gray, 26.

Defendant requested the court to charge, " that the killing of said Smith was neither justifiable, accidental, or excusable, on the part of said Crosier," in order for plaintiff to recover. The statute gives a right of action " in case of the death or disability of any person either from the injury received as herein specified," that is, by the " *wilful* " commission of an injury upon that person, by another, in a state of intoxication, " or in consequence of intoxication from the use of liquors unlawfully furnished." Hence, when the court told the jury, in substance, that in order for the plaintiff to recover, they must find that the firing of the gun was " intentional "—"on purpose"—and not accidental, or in necessary self-defence, that was all the defendant had a right to ask. The court correctly defined the word " wilful." It means " full of will," " acting upon design," " doing a thing intention-ally," as distinguished from doing it accidentally, or without any operation of the will. It does not mean with a criminal intent, or a malicious design to the injury. The statute was designed to make the man who unlawfully furnishes any part of the liquor with which another becomes intoxicated, responsible to the same extent, and in the same form of action, in case he injures the person or property of another, that the drunken man himself would

be. The test is, could Smith, had he survived the affray, have maintained trespass for an assault against Crosier? Obviously he could, provided the gun was fired by Crosier with design to hit him. If accidental or in self-defence, he could not. It was not necessary for the court to go into any exposition of the law of homicide. The element of malice, or criminal intent, is not involved in this statute. Its purpose was to make the drunken man, and him who made him drunk, answer for injuries and wrongs when the person doing the act, intentionally, might be too drunk to cherish malice, or harbor criminal intent.

The charge of the court as to the duty of a man to retreat when assaulted, and not use a deadly weapon until it becomes absolutely necessary for self-defence, was as favorable to defendant as he could ask, or the authorities justify. *State* v. *Patterson*, 45 Vt. 308; 3 Greenl. Ev. § 116; 2 Bishop Crim. Law, § 560 *et seq.*

The case is one eminently proper for granting such a close-jail certificate. The action is tort. The jury have found that defendant unlawfully sold intoxicating liquors to Crosier; that by reason thereof, Crosier became intoxicated, and while in that condition took the life of plaintiff's husband. A bare statement of the case is all the moral or legal justification the court below needs for granting the certificate. If the case is one where the county court in the exercise of its discretion could properly grant the certificate, its decision on that subject cannot be revised here. Gen. Sts. 704, §§23; *Robinson* v. *Wilson*, 22 Vt. 35.

The opinion of the court was delivered by

WHEELER, J. This statute was enacted to compel those who will hazard causing damage by unlawfully furnishing intoxicating liquors to others, to stand to the risk, by holding them liable for the damage to those who may suffer it. It created a remedy for wrong where there was none before, and is, on familiar principles, to be liberally construed toward effectuating its purpose. The liability was limited to injuries wilfully committed, for the reason, probably, that such injuries would be traceable, generally, in some degree, through the inflamed passions and perverted judgment of the intoxicated person who committed them, to the unlawful act

that produced the intoxication, and not for the purpose of confining it to deliberate acts of sober judgment. The wilfulness taken hold of by the statute, is such as a drunken person may have, and that only could have been intended. If that of a sober person had been intended, no intoxicated person could have it, and the statute would not apply to anything. If the act is the result of such capacity for determining what he will do as the intoxicated person has, it is within the meaning of the statute. The presumption, in the first instance, always is, that a person intends to do what he does do, so far as he can intend. Accordingly, proof that an intoxicated person committed an injury, if no excuse or justification appears out of the circumstances, is sufficient from which to find that he did it intentionally or wilfully, according to his capacity; and such proof will make out this part of a case under this statute, unless some excuse or justification is made to appear by way of defence from other circumstances. The statute makes the seller of the liquor liable in the same form of action that the intoxicated person is, and provides for joining them in the same action; and no reason is apparent why the rule of evidence as to proof of the injury, should not be the same for each, whether sued jointly or separately. It may be that a special plea would be necessary for the person committing the injury, and not for the seller of the liquor in some cases; but there is no question of that kind here.

The word *injury*, in the statute, was, doubtless, used in the sense of unlawful damage or hurt; and, plainly, anything done in lawful self-defence, would lay no foundation for an action on the statute. But the law allows persons to use against others such means only as are *necessary* for self-defence. Resort to a deadly weapon is not necessary, adequately, except to avert impending death or enormous bodily harm. Foster's Crown Law, 273; 1 Hawk. P. C. ch. 28; 4 Bl. Com. 184; *State* v. *Patterson*, 45 Vt. 308. Whatever of violence there may be in any case, beyond what is fairly necessary, is unlawful and actionable. Buller N. P. 18; 2 Greenl. Ev. § 95; *Harrison* v. *Harrison*, 43 Vt. 417. The correctness of the charge of the court in this case, that if

69

Crozier could get himself out of the way and save himself short of resorting to a deadly weapon, then the use of one was not necessary for self-defence, is, in view of these principles, self-evident. And the submission to the jury to find whether the act done by him was done designedly or purposely, and whether it was done without justification, as these questions were submitted, left it to them to decide on proper considerations whether the injury was wilfully committed; and no error in the charge or refusal to charge, is apparent.

The statute as to certifying on executions, applies to all actions founded on tort, and to some others. This action is founded expressly on the sale of intoxicating liquors contrary to express statute. There can be no fair question but that it is of the class of actions to which the statute as to certifying, applies. This being the case, whether a certificate is to be granted, and to what extent, must rest on the finding of facts and discretion of the court in each case, and cannot be made ground for legal error by exception. The point made as to the constitutionality of the statute has not been urged, and needs no consideration here.

Judgment affirmed.